UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stacey D. Davidson, | No. 1:25-cv-00766-GSA |
| Plaintiff, | **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| Commissioner of Social Security, | |
| Defendant | (ECF Nos. 17, 19) |

**I.      Introduction**

Plaintiff Stacey D. Davidson seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (SSDI) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act.

**II.      Procedural Background**

On August 4, 2022, Plaintiff applied for SSDI and SSI alleging disability commencing on April 6, 2019.  These claims were denied initially on October 20, 2022, and upon reconsideration on February 15, 2023.

On January 11, 2024, a hearing was held before an ALJ.  On May 10, 2024, the ALJ issued an unfavorable decision.  The Appeals Council denied the request for review on February 25, 2025. On June 23, 2025, Plaintiff filed a complaint in this Court.

1

### III.    <u>The Disability Standard</u>

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but it is less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists for him/her, or whether he/she would be hired if he applied

for work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a Claimant.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the Claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a Claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the Claimant had medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the Claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the Claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given a Claimant's RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 6, 2019.  AR 30.  At step two, the ALJ found that Plaintiff had the following severe impairments: diabetic neuropathy, lumbar spondylosis, carpometacarpal arthritis of the right hand, left knee osteoarthritis, right knee osteoarthritis and tear, and obesity.  AR 30.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 32–33.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and

416.967(b), except: 1- she can lift and carry 20 pounds occasionally and 10 pounds frequently, but with the non-dominant right upper extremity; 2- she is capable of lifting and carrying 10 pounds occasionally and 10 pounds frequently; 3- she is limited to 2 hours of standing and walking in an 8-hour workday and requires a cane for ambulation; 4- she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; 5- she can frequently balance and stoop and can occasionally kneel, crouch, and crawl, and 6- she is limited to frequent handling and fingering with the non-dominant right upper extremity.  AR 33–37.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work.  AR 37.  At step five, relying on the Vocational Expert's testimony, the ALJ found that considering the Plaintiff's vocational profile (age, education, work experience and RFC), Plaintiff could perform the following jobs existing in significant numbers in the national economy: bench assembler, lens inserter, and document preparer.  AR  39.

Accordingly, the ALJ concluded that the Plaintiff was not disabled at any time since the alleged disability onset date of April 6, 2019.  AR 39.

## V.    Issues Presented

Plaintiff asserts one claim of error: "The ALJ Erred By Failing To Provide Specific, Clear And Convincing Reasons To Discount Plaintiff's Testimony."  MSJ at 19, ECF No. 17.

### A.    Subjective Symptoms, RFC

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a claimant is still capable of doing despite the claimant's particular limitations.  This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record.  20 C.F.R. § 416.945(a)(1).  The residual functional capacity must consider all of the claimant's impairments, whether those impairments are severe or non-severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

4

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the Claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the Claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the Claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a Claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, medical evidence "is still a relevant factor in determining the severity of Claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, other factors to be considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- the treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.    Analysis

Although a significant portion of Plaintiff's medical history is not necessarily outcome determinative to Plaintiff's claim, it is however important to put Plaintiff's extensive impairments in context.

### a.    Factual Background

On April 4, 2019, two days before the alleged disability onset date, while working at an Amazon warehouse, Plaintiff fell on both knees and right hand. AR 1118–19, 1242. Plaintiff weighed 412 pounds with a BMI of 50.151. AR 1121. She had existing lumbar spine treatment with medication for pain. AR 1119. She had Type 2 Diabetes Mellitus, neuropathy and history of right knee surgery. Id.

A few days after the fall she was examined by Dr. Mangat (AR 1117–22), who noted swollen and tender knees, reduced ROM, antalgic gait, sprained ankle, and hand and knees bruising. Id. A right knee x-ray showed only osteoarthritis. AR 1251. She completed physical therapy. AR 1117, 1178-1205.

April 24, 2019, a follow up noted cane use, pain and limited ROM in the right knee, thumb, and ankle. AR 1112. Physical exams were commensurate with these reports. AR 1099–1110.

A July 2019 MRI noted medial and lateral meniscus tears, medial and patellofemoral arthritis. AR 1048–49.

On August 5, 2019, Plaintiff saw orthopedist Dr. Mochizuki who noted BMI of 54, broad-based gait, cane use, tenderness, swelling, crepitus, and an overall physical exam and imaging findings consistent with prior findings as set forth above. Dr. Mochizuki administered corticosteroid injections and submitted hyaluronic acid requests to insurance which was denied after 6 months. AR 1213, 1222, 1225, 1229, 1230, 1234–41). Examinations during this period were largely unchanged.

Insurance authorization for Supartz injections were then approved. AR 1211. BMI had increased to 55.82 as of July 2020 and Plaintiff received Toradol, cortisone, and Supartz injections. AR 1064; AR 1206–08.

In September 2020 at a PCP appointment, Plaintiff reported her lumbar spine pain was 8.5-10, and was assessed with uncontrolled diabetes. 1748, 1750.

Additional Supartz injections provided no benefit. On November 21, 2020, she had a workers' compensation exam where she reported some difficulty with most ADLs. AR 2138. Examination findings were largely unchanged from prior visits with her treating clinicians. AR 2144–48. A Dr. Omid opined that her fall aggravated existing arthritis that she had previously

6

developed due to her obesity. AR 2149.  Dr. Omid further opined that she hadn't reached MMI and should limit standing and sitting.  He noted that with a BMI of 57  Plaintiff had a very high chance of complications if she undergoes a total knee arthroplasty. AR 2150.

Additional pain management visits at J&P Spine and Joint Center starting December 1, 2020, noted unchanged findings from prior exams regarding her lumbar spine, and medications were maintained.  AR 1822–83.

The same is true of January 2021 visits at Concentra noting 9 out of 10 pain in knees, ankle, and lumbar spine.  AR 1060.  Her PCP referred her for weight loss surgery. AR 1755.  Pain medication regimen was largely unchanged. AR 1918. At a February 18, 2021 workers compensation exam with Dr. Gursahani, pain reports and exam findings were largely unchanged. Id.

In April 2021, at her three-month follow up visit to J&P Spine & Joint Center, pain reports and exam findings were largely unchanged other than positive Slump and Patrick Tests for nerve impingement and dysfunction of the sacroiliac joint.  AR 1828.  Her pain medications were refilled. (AR 1829)

In June 2021, BMI increased to 60.21. AR 1765.  In October 2021, she began a 2-month workup including hospital stay and surgery for an infected left thigh wound due to uncontrolled diabetes.  AR 1768–69, 1770–73, 1780, 2953-3384.

In February 2022, she saw a new pain management specialist with largely unchanged findings except for complaints of extremity numbness for which an EMG was ordered.  AR 1840.

March 22, 2022, QME noted largely unchanged findings but noted potential complications for knee arthroplasty, noting also her BMI for which she was pending a gastric bypass.

A March 25, 2022 pain management follow up reported nothing novel.  AR 1842.  Medial branch blocks were ordered for L2 through S1.  She reported no relief from trigger point injections. AR 2298.

On June 27, 2022, during a visit with worker's compensation Dr. Gursahani, she reported worsening right hand pain, swelling in both legs, and was elevating her legs to relieve pressure. AR 1875–76.  Exam findings were unchanged except for possible pitting edema along with a

reduced sensation from knees to feet.  An updated MRI (AR 1966-1967) showed a meniscus tear and blister, ACL sprain with impinging spurs, quad tendinosis, mild edema and bursitis, tricompartmental osteoarthritis, and joint effusion.  AR 1967.

An August 24, 2022 workers compensation follow up noted unchanged pain reports of knees and hands at level 8 of 10.  AR 2229. Exam findings were largely unchanged noting limping gait, LE swelling, reduced sensation of LE, tenderness and pain, and reduced ROM of the knees. AR 2229–30.  Also noted was diabetes mellitis and that swelling of the upper and lower extremities was uncontrolled.  AR 2858, 2861, 2859.

On October 10, 2022, she had a gastric bypass surgery.  AR 2383–2635.  She needed to lose weight for knee replacement surgery.   AR 2883.  She lost 40 pounds in six weeks. AR 2885. Her BMI score was 49.  AR 2315.  She reported the injection she received in September did not improve her pain. (AR 2316) An examination noted restricted range of motion with pain of her lumbar spine and positive straight leg raising tests bilaterally in the sitting position.  Id.  Her pain medications were refilled, and another round of trigger point injections were administered bilaterally to her low back.  AR 2316.  The median branch block was deferred pending an anticipated knee replacement surgery.  AR 2316.

A QME on December 4, 2022 noted unchanged findings and symptom reports with ADLs reported as difficulty bathing, dressing, typing, standing, sitting, walking, feeling, toileting and climbing stairs.  AR 2258; AR 2261; 2264.  Diagnoses were largely consistent with prior QMEs and examinations by her clinicians with the addition perhaps of patellofemoral chondromalacia AR 2266.   Dr. Omid opined that Ms. Davidson's injuries had reached "maximum medical improvement" and "therefore permanent and stationary at this time."  AR 2267.  He apportioned her knee injuries to be sixty percent due to her workplace fall.  Id.  Workplace limitations assigned to Ms. Davidson included never climbing, forward bending, kneeling, crawling, or twisting; no prolonged walking or standing, and breaks from walking and standing every hour for five minutes (AR 2267, 2269)

Plaintiff lost 73 pounds by January of 2023.  AR 2894.  She reported 6 falls due to knees giving out.  AR 2366.  She reported that she has knee pain when she sits down because the position

puts pressure on her knees. Id.

As of June 16, 2023, she had lost 140 pounds from the gastric bypass. AR 2322. Knees remained painful. She weighed 342 pounds at 6 foot 4 inches. AR 2322. Dr. Simonian referred Ms. Davidson for bilateral knee replacements. AR 2324. As of November 20, 2023, Ms. Davidson remained waiting for insurance authorization for the recommended bilateral knee replacement surgeries. AR 2930.

### b.    The ALJ's reasoning for discrediting Plaintiff's testimony

To begin, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms" and found no malingering. AR 37. Therefore, the ALJ was required to identify clear and convincing reasons for rejecting Plaintiff's testimony concerning pain and other limiting symptoms. The ALJ found Plaintiffs' testimony "somewhat consistent with the evidence and have factored in the use of her cane and reduced her standing and walking to a very small amount (2 hours) during the workday." AR 37.

Of note Plaintiff testified, among other things, that she can sit for about 25 minutes at one time and needs assistance rising from a seated position. (AR 62, 621).

Initially, Plaintiff disputes the ALJ's reliance on Plaintiff's "appropriate appearance and grooming" at the hearing along with Plaintiff's reports of modest ADLs, including using zippers, driving, texting and talking on the phone, which the ALJ found "do not support the greater level of hand limitations that she alleges." Id. (emphasis added). However, despite these deputes, Plaintiff's primary challenge is apparently limited to the extent to which the ALJ sufficiently addressed or incorporated into the RFC limitations concerning Plaintiff's ability to sit. See MSJ at 21 ("Missing . . . is any consideration of Ms. Davidson's testimony regarding her limitations with remaining in a sitting position."); See MSJ at 22 ("the ALJ simply failed to consider Ms. Davidson's testimony regarding her sitting limitations . . ..."); and See MSJ at 24 (discussing "her ability to sit for long periods").

Plaintiff's primary challenge is illustrated by the following:

Missing from the ALJ's reasoning is any consideration of Ms. Davidson's testimony regarding her limitations with remaining in a sitting position. Ms. Davidson testified, among other things, that her impairments cause her pain when sitting, she can sit for about 25 minutes at one time, and she needs assistance rising from a seated position. (AR 62, 621) The ALJ was required to set forth "specific, clear and convincing reasons" for not fully crediting her testimony. Trevizo, 871 F.3d at 678. The ALJ failed to do so.

MSJ at 20 (emphasis added).

To begin, although Plaintiff has expressed having numerous impairments and corresponding limitations, as mentioned above, it is again worth noting that her claim centers around the ALJ's failure to properly address her limitations with respect to remaining in a seated position.

Initially, with respect to the objective evidence, Plaintiff contends the ALJ does not identify what objective evidence contradicts Plaintiff's testimony regarding her sitting limitations:

Moreover, an ALJ may not justify disregarding a claimant's testimony "by ignoring competent evidence in the record that suggest an opposite result." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). Here, the record is replete with objective evidence of Ms. Davidson's lumbar spine impairment for which she was under the care of pain management specialists and prescribed multiple medications, including narcotic medication; clinical findings of a restricted range of motion, reduced strength in her hips, and positive straight leg raising tests; repeated Toradol injections administered to the lumbar spine; additional pain medications prescribed including a lidocaine "pain patch"; and a medial branch block to be administered bilaterally at L3- S1 following anticipated knee replacement surgery. (AR 1119, 1765, 1820-1824, 1826-1830, 1837-1841, 1842-1846, 1847-1850, 1851, 1890, 2296-2299, 2300-2304, 2305-2307, 2308-2312, 2313-2317, 2318-2821) Lumbar spine pain can be increased with sitting as the position puts pressure on discs in the lower spine.[1]

MSJ at 21.

Plaintiff is correct that the record is replete with evidence regarding her lumbar spine impairments, pain management records, medication prescriptions, physical exam findings, imaging, medial

---

[1] https://medlineplus.gov/genetics/condition/intervertebral-disc-disease/

10

branch block procedures, and other evidence concerning her lumbar spine. Plaintiff further asserts, with supporting citation, that "Lumbar spine pain <u>can</u> be increased with sitting as the position puts pressure on discs in the lower spine." (emphasis added). But even if this is true, Plaintiff does not satisfactorily identify evidence, subjective or otherwise, suggesting that <u>her</u> lumbar spine pain limited <u>her</u> ability to sit. Moreover, Plaintiff cites no testimony, function reports, or reports to clinicians that her lumbar spine limited her ability to sit.

Importantly, it is Plaintiff's obligation to <u>prove</u> disability, not the ALJ's obligation to disprove Plaintiff's alleged disability. The caselaw supporting this proposition is extensive. <u>See</u>, <u>e.g.</u>, <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability."). SSR 17-4p ("Although we take a role in developing the evidentiary record . . . claimants . . . have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims."); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Plaintiff explains that she "reported to her physician that sitting increased the pain in her knees." MSJ at 21 (citing AR 2366)." This report however is a <u>subjective</u> statement made to a physician, and as such does not amount to objective evidence notwithstanding that it is contained in a medical record. Additionally, there were no objective corroborative pain provocation tests to support this, which might have included testing for pain upon range of motion exercises, tenderness to palpation, or other pain provoking techniques to substantiate the claim that sitting worsened her knee pain.

Further, with respect to her daily activities, Plaintiff explains as follows:[2]

The ALJ states that "the claimant's daily activities showed she was capable of

---

[2] The Court has omitted the bulk of the discussion as it consists mainly of legal citations and quotations regarding well established indisputable propositions which are not at issue here.

driving, shopping, and walking with a cane". (AR 35)  . . . Here, the ALJ did not specify how Ms. Davidson's testimony about her limited activities is inconsistent with her stated sitting limitations. Ms. Davidson reported that she shops by computer and in stores, twice a month, for 30 minutes. (AR 623) The ALJ also specifically referenced Plaintiff's reports of having difficulty with sitting and riding in a car for 30 minutes. (AR 37, citing AR 2138, 2258) Such evidence is not inconsistent with Ms. Davidson's testimony regarding her increased pain with sitting for long periods. Nor did the ALJ specify any inconsistency. . .  Because there is no inconsistency between Ms. Davidson's testimony regarding her sitting limitations and her daily activities, the ALJ's general reference to her limited activities is not a specific, clear, and convincing reason to discount her testimony. See, Id. In short, the ALJ's failure to provide a specific, clear and convincing reason to justify discounting Plaintiff's testimony regarding the effect of her physical impairments on her ability to sit for long periods constitutes legal error.

However, even if Plaintiff's testimony referenced above is true, and there is no reason to doubt that it is not, it  would still not necessarily result in work-preclusive limitations, or for that matter any additional limitations that are not already accounted for in the RFC.  For instance, Plaintiff emphasizes her reports of having difficulty with sitting and riding in a car for 30 minutes. AR 2138, 2258.  She first noted this during a November 21, 2020 qualified medical exam (QME) for a worker's compensation claim.  AR 2138.  And she also reported the same during a December 4, 2022 QME.  AR 2258.  The ALJ acknowledged both reports.  See, AR 37 ("On November 21, 2020, the claimant reported some difficulty with . . . riding in a car for 30 minutes . . .On December 4, 2022, she reported some difficulty with  . . . sitting in a car for 30 minutes,").

But "Difficulty," without more, is too non-specific and as such does not warrant changes to the RFC. The RFC does not represent the most one can do without difficulty but rather represents the most one can do despite one's limitations. See, SSR 83-10.  Additionally, the extent of this "difficulty", and what Plaintiff must do to alleviate it, is not explained.

Plaintiff also testified she can sit only 25 minutes before she gets up.  AR 62.  Plaintiff concludes that the ALJ "simply failed to consider Ms. Davidson's testimony regarding her sitting limitations at all."  AR 21.  Granted, the ALJ did not specifically acknowledge Plaintiff's testimony that she cannot sit for more than 25 minutes before getting up, however the ALJ did acknowledge

Plaintiff's alleged limitation in sitting for a car ride more than 30 minutes which Plaintiff reported at both of her QMEs during her worker's compensation claim. These two statements during the QME are virtually identical.  The ALJ was fully aware of the alleged sitting limitation and sufficiently covered the evidence regarding same.

In sum, the evidence Plaintiff identifies in support of the claim concerning her sitting limitations is as follows: 1- Plaintiff has lumbar spine impairments, and extended sitting <u>can</u> <u>generally</u> cause lumbar spine pain (even though Plaintiff did not report this); 2- objective evidence supports her claim because she "reported to her physician that sitting increased the pain in her knees"; 3- she reported at both QMEs that she had difficulty with car rides lasting longer than 30 minutes; and 4- she testified that she cannot sit for more than 25 minutes.

Again: as to point 1, the fact that sitting <u>can</u> increase lumbar spine pain is not evidence that sitting <u>did</u> increase her lumbar spine; as to point 2, her reports to clinicians that sitting exacerbated knee pain is not objective evidence simply because it was reflected in a medical record; as to point 3, reports of "difficulty" with car rides longer than 30 minutes do not undermine the RFC because the RFC is not the most one can do without difficulty, but rather is the most one can do <u>despite</u> one's limitations, and finally; as to point 4, her testimony regarding intolerance to more than 25 minutes of sitting was not sufficiently developed.  Unanswered are: 1- why is it that she cannot sit for more than 25 minutes; 2- what symptoms are triggered; 3- how severe are those symptoms; 4- what does a break from sitting consist of; and 5- how long must this break last before Plaintiff is able to return to sitting.  This information would unquestionably have been very helpful in precisely assessing the functional impact of Plaintiff's alleged limitation.  However, Plaintiff did not explain this information to her clinicians, nor do so in her function report, nor during her QMEs, nor at the ALJ hearing.  Finally, there was a lack of follow up questions at the ALJ hearing about the sitting limitation.  Ultimately, it was up to Plaintiff to provide the relevant information, not for the ALJ to

so.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").  Lastly, it bears mentioning that the two QME physicians concluded that Plaintiff could sit 6 of 8 working hours. AR 36, 2259.

Therefore, in sum, there is insufficient evidence to justify remand for reconsideration of Plaintiff's alleged sitting limitations.

**VI.    Conclusion and Order**

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1.  Plaintiff's motion for summary judgment (Doc. 17) is **DENIED**.

2.  Defendant's cross motion (Doc. 19) is **GRANTED.**

3.  The Commissioner's Decision is **AFFIRMED**

4.  The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:   **April 21, 2026**            **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE